**Fill in this information to identify the case:**

Debtor 1  Robert Schultz

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court  Northern District of Illinois

Case number: 18-23147

FILED
U.S. Bankruptcy Court
Northern District of Illinois
10/4/2018

Jeffrey P. Allsteadt, Clerk


EXHIBIT A

# Official Form 410
## Proof of Claim

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. **Do not use this form to** make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

**1. Who is the current creditor?**

Wesglen Parkside Condominium Association

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Wesglen Parkside Condominium Association
Name
Keay & Costello, P.C.
128 S. County Farm Road
Wheaton, IL 60187

Contact phone  630-690-6446
Contact email  ben@keaycostello.com

Where should payments to the creditor be sent? (if different)

Name

Contact phone
Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____  Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

Official Form 410                          Proof of Claim                          page 1

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |
| 7. How much is the claim? | $ 661.50  Does this amount include interest or other charges?<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Association common expense |
| 9. Is all or part of the claim secured? | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☑ Real estate.  If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** Association lien<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $ 128979.00<br>**Amount of the claim that is secured:** $ 661.50<br>**Amount of the claim that is unsecured:** $ 0.00  (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $ _____<br><br>**Annual Interest Rate** (when case was filed) _____ %<br>☑ Fixed<br>☐ Variable |
| 10. Is this claim based on a lease? | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |
| 11. Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410                         Proof of Claim                         page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply*: | **Amount entitled to priority** |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ _____ |
| | * Amounts are subject to adjustment on 4/1/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   10/4/2018
                   MM / DD / YYYY

/s/ Benjamin J. Rooney
_____
Signature

Print the name of the person who is completing and signing this claim:

Name        Benjamin J. Rooney
            First name    Middle name    Last name

Title       _____

Company     Keay & Costello, P.C.
            Identify the corporate servicer as the company if the authorized agent is a servicer

Address     128 S. County Farm Road
            Number  Street
            Wheaton, IL 60187
            City   State   ZIP Code

Contact phone   630-690-6446        Email   ben@keaycostello.com

Official Form 410                     Proof of Claim                          page 3

## Account History Report
## Wesglen Parkside Condo Assoc

**Robert J Schultz**  00220-9100

Community Address: 1504 Azalea Circle
Romeoville, IL 60446

Date Settled: Fri Jan 20, 2017
Unit Type: 01 - Unit Type 01

Mailing Address: 1504 Azalea Circle
Romeoville, IL 60446

Last payment date: Fri Jul 27, 2018
Last payment amount: 250.00
Current balance: 914.10

| Trans Date | Transaction | Charges | Payments | Balance | Date Billed | Reference | Comments |
|---|---|---|---|---|---|---|---|
| 10/27/2017 | Opening Balance | 1.00 | | 1.00 | | | |
| 11/01/2017 | Master Association Assessn | 50.00 | | 51.00 | | Monthly Charges | Recurring Charges: 11/01/2017 |
| 11/01/2017 | Monthly Assessment | 123.83 | | 174.83 | | Monthly Charges | Recurring Charges: 11/01/2017 |
| 11/15/2017 | Late Fee | 25.00 | | 199.83 | | Late Fee | Late Fee: 11/15/2017 |
| 12/01/2017 | Master Association Assessn | 50.00 | | 249.83 | | Monthly Charges | Recurring Charges: 12/01/2017 |
| 12/01/2017 | Monthly Assessment | 123.83 | | 373.66 | | Monthly Charges | Recurring Charges: 12/01/2017 |
| 12/04/2017 | Lockbox Payment | | -198.38 | 175.28 | | 2014 | Lock Box: 12/04/2017 |
| 12/15/2017 | Late Fee | 25.00 | | 200.28 | | Late Fee | Late Fee: 12/15/2017 |
| 01/01/2018 | Master Association Assessn | 50.00 | | 250.28 | | Monthly Charges | Recurring Charges: 01/01/2018 |
| 01/01/2018 | Monthly Assessment | 126.30 | | 376.58 | | Monthly Charges | Recurring Charges: 01/01/2018 |
| 01/02/2018 | Lockbox Payment | | -173.83 | 202.75 | | 2016 | Lock Box: 01/02/2018 |
| 01/15/2018 | Late Fee | 25.00 | | 227.75 | | Late Fee | Late Fee: 01/15/2018 |
| 01/29/2018 | Online Payment | | -205.00 | 22.75 | | py_1BphXgEllAyt1 | Online ACH Payment |
| 02/01/2018 | Master Association Assessn | 50.00 | | 72.75 | | Monthly Charges | Recurring Charges: 02/01/2018 |
| 02/01/2018 | Monthly Assessment | 126.30 | | 199.05 | | Monthly Charges | Recurring Charges: 02/01/2018 |
| 02/15/2018 | Late Fee | 25.00 | | 224.05 | | Late Fee | Late Fee: 02/15/2018 |
| 02/22/2018 | Online Payment | | -224.05 | 0.00 | | py_1ByN7tEllAyt1 | Online ACH Payment |
| 03/01/2018 | Master Association Assessn | 50.00 | | 50.00 | | Monthly Charges | Recurring Charges: 03/01/2018 |
| 03/01/2018 | Monthly Assessment | 126.30 | | 176.30 | | Monthly Charges | Recurring Charges: 03/01/2018 |
| 03/15/2018 | Late Fee | 25.00 | | 201.30 | | Late Fee | Late Fee: 03/15/2018 |
| 03/22/2018 | Online Payment | | -201.30 | 0.00 | | py_1C8WaOEllAyt | Online ACH Payment |
| 04/01/2018 | Master Association Assessn | 50.00 | | 50.00 | | Monthly Charges | Recurring Charges: 04/01/2018 |
| 04/01/2018 | Monthly Assessment | 126.30 | | 176.30 | | Monthly Charges | Recurring Charges: 04/01/2018 |
| 04/15/2018 | Late Fee | 25.00 | | 201.30 | | Late Fee | Late Fee: 04/15/2018 |
| 05/01/2018 | Master Association Assessn | 50.00 | | 251.30 | | Monthly Charges | Recurring Charges: 05/01/2018 |
| 05/01/2018 | Monthly Assessment | 126.30 | | 377.60 | | Monthly Charges | Recurring Charges: 05/01/2018 |
| 05/03/2018 | Online Payment | | -180.00 | 197.60 | | py_1CNqDBEllAyt | Online ACH Payment |
| 05/15/2018 | Late Fee | 25.00 | | 222.60 | | Late Fee | Late Fee: 05/15/2018 |
| 06/01/2018 | Master Association Assessn | 50.00 | | 272.60 | | Monthly Charges | Recurring Charges: 06/01/2018 |
| 06/01/2018 | Monthly Assessment | 126.30 | | 398.90 | | Monthly Charges | Recurring Charges: 06/01/2018 |
| 06/15/2018 | Late Fee | 25.00 | | 423.90 | | Late Fee | Late Fee: 06/15/2018 |
| 06/25/2018 | Demand Letter Charge | 35.00 | | 458.90 | | Demand Letter | Processing Fee |
| 06/28/2018 | Online Payment | | -250.00 | 208.90 | | py_1Ci7HiEllAyt1C | Online ACH Payment |
| 07/01/2018 | Master Association Assessn | 50.00 | | 258.90 | | Monthly Charges | Recurring Charges: 07/01/2018 |
| 07/01/2018 | Monthly Assessment | 126.30 | | 385.20 | | Monthly Charges | Recurring Charges: 07/01/2018 |
| 07/15/2018 | Late Fee | 25.00 | | 410.20 | | Late Fee | Late Fee: 07/15/2018 |
| 07/27/2018 | Online Payment | | -250.00 | 160.20 | | py_1CscRMEllAyt | Online ACH Payment |
| 08/01/2018 | Master Association Assessn | 50.00 | | 210.20 | | Monthly Charges | Recurring Charges: 08/01/2018 |
| 08/01/2018 | Monthly Assessment | 126.30 | | 336.50 | | Monthly Charges | Recurring Charges: 08/01/2018 |
| 08/15/2018 | Late Fee | 25.00 | | 361.50 | | Late Fee | Late Fee: 08/15/2018 |

*[Handwritten]* 10-4-18 BK Legal fee $300.00    661.50

# PARKSIDE CONDOMINIUM ASSOCIATION DECLARATION

## OF

## COVENANTS, CONDITIONS, RESTRICTIONS AND EASEMENTS

```
MARY ANN STUKEL                    68P
      Will County Recorder
           Will County
R 99128921              Page 1 of 68
BAN Date 10/21/1999   Time 14:42:50
Recording Fees:              117.00
```

This Instrument Was Prepared By:
Return To:

Peter H. Jagel, Esq.
Knuckles & Jagel
48 E. Jefferson Avenue
Naperville, Illinois 60540
(630) 369-2700

10. Maintenance, repair and replacement of outside and entry lighting, fences, retaining walls, address signage, except for entryway monuments and related landscaping, which shall be the responsibility of the Wesglen Master Association.

In addition, except for work for which the City or a public utility company is responsible, the Association shall repair, maintain, and replace (and the repair of any consequential damage caused thereby) conduits, cables, pipes, electrical wiring, transformers and switching apparatus and other equipment including housings for such equipment, utilized and necessary for the purpose of providing utility and/or commercial entertainment services, which are located in, over, under, along, on through or about a Dwelling Unit (regardless of whether such repair or maintenance is required for the particular Dwelling Unit in which the work is being performed, another Dwelling Unit or any portion of the Development.)

Section 7.05. <u>Owner Requested Maintenance</u>   If the Association proposes to furnish maintenance with respect to a Dwelling Unit at the request of its Owner, other than as required by this Declaration, the Association shall require such Owner to pay the full cost thereof. In the event an Owner installs his own foundation plantings or any other planting outside his Unit, the Association shall have the right to assess such Owner for any additional cost in providing for the maintenance of such planting.

Section 7.06. <u>Association Easement</u>  The Association, its successors, assigns, agents and employees, is hereby granted the right and easement to enter in and upon the exterior of any Dwelling Unit at any reasonable time to perform any maintenance, repair or replacement contemplated in this Declaration.

Section 7.07. <u>Entry Signs</u>  The Wesglen Master Association shall provide for the care, maintenance, replacement, and reconstruction of entry signs constructed by Declarant identifying the Association and the landscaping around such signs, whether located on Common Elements, if approved by the City, within the public right-of-way.

Section 7.08. <u>Watering Costs</u>  The Declarant reserves for itself and for the Association, their designees, successors and assigns, the right to attach hoses and other water sprinkling devices to and obtain water from, water faucets located on the outside of any Building, in order to assist in carrying out their duties and responsibilities as provided for herein. If said water faucets are "metered" to a particular Unit Owner, said Owner shall promptly be reimbursed by the Association as to said costs incurred. The method of implementation and amount of said reimbursement shall be decided by the Board based upon estimated water use at current water rates and the Owners whose water is to be used will be notified by the Board prior to the beginning of each landscaping season.

## ARTICLE VIII
## ASSESSMENTS

Section 8.01. <u>Creation of Assessments</u>   There are hereby created assessments for

9

Association expenses as may from time to time specifically be authorized by the Board to be commenced at the time and in the manner set forth in Section 8.07 of this Article. There shall be four (4) types of assessments: (a) Condominium Assessments to fund Common Expenses for the benefit of all Members; (b) Master Assessments for the Wesglen Master Association; (c) Special Assessments as described in Section 8.04 below; and (d) Assessments as provided for in Section 7.02.

Condominium Assessments shall be levied pursuant to each Unit's percent interest as provided in Section 8.02 below. Master Assessments shall be levied equally on all Units as provided in Section 8.03 below. Special Assessments shall be levied as provided in Section 8.04 below. Each Owner, by acceptance of a deed or recorded contract of sale to any Unit, is deemed to covenant and agree to pay these assessments.

All assessments, and all other amounts due to the Association by an Owner, together with reasonable late charges, in amounts to be established in advance, uniformly, by the Board, and reasonable attorney's fees, shall be a lien on the land and shall be a continuing lien upon the Unit until paid. All such amounts, together with late charges, costs, and reasonable attorney's fees, shall also be the personal obligation of the Person who was the Owner of such Unit at the time the obligation arose, and if title to such Unit is held in trust, then each beneficiary thereof shall also be jointly and severally liable therefor. Upon transfer of title to a Unit, the grantee, by acceptance of the deed to such Unit, is deemed to assume such personal obligation for past due assessments, including late charges, costs and attorney's fees, and shall be jointly and severally liable with the grantor for such portion thereof as may be due and payable at the time of conveyance, except no first Mortgagee who obtains title to a Unit pursuant to the remedies provided in the Mortgage shall be liable for unpaid assessments which accrued prior to such acquisition of title.

The Association shall, upon demand at any time, furnish to any Owner liable for any type of assessment a certificate in writing signed by an officer or the Managing Agent of the Association setting forth whether such assessment and other amounts have been paid as to any particular Unit. Such certificate shall be conclusive evidence of payment to the Association of such assessment and other amounts therein stated to have been paid. The Association may require the advance payment of a processing fee, the amount of which shall be approved by the Board. The Association may delegate this obligation and assign the right to receive said fee to its Managing Agent.

Assessments shall be paid monthly on the first day of each month, or in such manner and on such dates as may otherwise be fixed by the Board. Each Owner, by acceptance of a deed to his or her Unit, acknowledges that all Condominium Assessments and Master Assessments levied hereunder are annual assessments due and payable in advance on the first day of the fiscal year; provided, the Board may permit any assessment to be paid in installments. Unless the Board otherwise provides, Condominium Assessments and any Master Assessment may be paid in monthly installments.

No Owner may waive or otherwise exempt himself from liability for the assessments provided for herein, including, by way of illustration and not limitation, by non-use of Common Elements or abandonment of the Unit. The obligation to pay assessments is a separate and independent covenant

10.

on the part of each Owner. No diminution or abatement of assessment or set-off shall be claimed or allowed by reason of any alleged failure of the Association or Board to take some action or perform some function required to be taken or performed by the Association or Board under this Declaration or the By-Laws, or for inconvenience or discomfort arising from the making of repairs or improvements which are the responsibility of the Association, or from any action taken to comply with any law, ordinance, or with any order of directive of any municipal or other governmental authority.

Section 8.02. <u>Computation of Condominium Assessments</u> It shall be the duty of the Board, at least sixty (60) days before the beginning of each fiscal year, to prepare a budget covering the estimated Common Expenses of the Association during the coming year. The budget shall include a capital contribution establishing a reserve fund in accordance with a capital budget separately prepared.

The Condominium Assessment to be levied for the coming year against each Unit subject to assessment under Section 8.07 below shall be computed by multiplying the budgeted Common Expenses by the percent interest of each respective Unit submitted to the Declaration. The Board shall cause a copy of the Common Expense budget and notice of the amount of the Condominium Assessments to be levied against each Unit for the following year to be mailed to each Owner at least thirty (30) days prior to the beginning of the fiscal year, and no less than ten (10) and no more than thirty (30) days prior to any Board meeting concerning the adoption of the proposed annual budget or any increase or establishment of an assessment.

Notwithstanding the foregoing, however, in the event the proposed budget is disapproved or the Board fails for any reason so to determine the budget for any year, then and until such time as a budget shall have been determined as provided herein, the budget in effect for the immediately preceding year shall continue for the current year.

Section 8.03. <u>Master Assessments</u> The Master Association shall prepare its budget in accordance with the provisions of the Master Association Declaration and provide notice of such budget or special assessment as provided therein. Each Owner is a member of the Master Association and is subject to and has all of the rights and benefits under the Master Association Declaration, which Declaration is incorporated herein and made a part hereof by its reference. Pursuant to the Master Association Declaration, members of the Master Association are subject to assessment by the Master Association. Assessments upon members of the Master Association are to be paid to, and collected by, this Association on behalf of and for payment to the Master Association in the manner provided by the Master Association, or if no provision is made, than as may be provided by the Board of this Association. Master Assessments are not assessments for Common Expenses of this Association.

In the event the proposed Master Assessment is disapproved or the Master Association Board fails for any reason so to determine the budget for any year, then and until such time as a budget shall have been determined as provided herein, the budget in effect for the immediately preceding year shall

continue for the current year.

Section 8.04. **Special Assessments** In addition to the assessments authorized in Section 8.02 of this Article, the Association may levy a Special Assessment or Special Assessments from time to time for nonrecurring expenses, improvements, maintenance or repairs to the Common Elements. The Board shall cause a notice of the amount of such special assessment to be levied against each Unit to be mailed to each Owner no less than ten (10) and no more than thirty (30) days prior to any Board meeting concerning the adoption of the proposed special assessment. The Board, upon written petition by Owners with twenty percent (20%) of the votes of the Association delivered to the Board within fourteen (14) days of the Board action, shall call a meeting of the Owners within thirty (30) days of the date of delivery of the petition to consider the special assessment. Unless a majority of the total votes of the Owners are cast at the meeting to reject the special assessment, it is ratified. Special Assessments shall be payable in such manner and at such times as determined by the Board, and may be payable in installments extending beyond the fiscal year in which the Special Assessment is approved, if the Board so determines.

Section 8.05. **Lien for Assessments** Upon recording of a notice of lien on any Unit, there shall exist a perfected lien for unpaid assessments prior and superior to all other liens, except (1) all taxes, bonds, assessments, and other levies which by law would be superior thereto, and (2) the lien or charge of any first Mortgage of record (meaning any recorded Mortgage with the first priority over other Mortgages) made in good faith and for value. Such lien may be enforced by suit, judgment, and foreclosure.

The Association, acting on behalf of the Owners, shall have the power to bid for the Unit at foreclosure sale and to acquire and hold, lease, mortgage, and convey the same. During the period in which a Unit is owned by the Association following foreclosure: (a) No right to vote shall be exercised on its behalf; and (b) no assessment shall be assessed or levied on it. Suit to recover a money judgment for unpaid Common Expenses and attorney's fees shall be maintainable without foreclosing or waiving the lien securing the same.

Section 8.06. **Capital Budget and Contribution** The Board shall annually prepare a capital budget to take into account the number and nature of replaceable assets, the expected life of each asset, and the expected repair or replacement cost. The Board shall set the required capital contribution, if any, in an amount sufficient to permit meeting the projected capital needs of the Association, as shown on the capital budget, with respect both to amount and timing by annual assessments over the period of the budget. The capital contribution required, if any, shall be fixed by the Board and included within and distributed with the budget and assessments, as provided in Section 8.02 of this Article.

Section 8.07. **Date of Commencement of Assessments** All Common Expenses incurred or accrued prior to the first conveyance of a Unit shall be paid by the Declarant, and during this period no Condominium Assessment shall be payable to the Association. It shall be the duty of each Owner, including the Declarant, to pay his proportionate share of the Common Expenses commencing with

12

the first conveyance. The proportionate share shall be in the same ratio as his percentage of ownership in the Common Elements set forth in this Declaration.

Section 8.08. <u>Subordination of the Lien to First Mortgages</u>   The lien of assessments, including interest, late charges (subject to the limitations of Illinois law), and costs (including attorney's fees) provided for herein, shall be subordinate to the lien of any first Mortgage upon any Unit. The sale or transfer of any Unit shall not affect the assessment lien. However, the sale or transfer of any Unit pursuant to judicial or nonjudicial foreclosure of a first Mortgage shall extinguish the lien of such assessments as to payments which became due prior to such sale or transfer. No sale or transfer shall relieve such Unit from lien rights for any assessments thereafter becoming due. Where the Mortgagee holding a first Mortgage of record or other purchaser of a Unit obtains title pursuant to remedies under the Mortgage, its successors and assigns shall not be liable for the share of the Common Expenses or assessments by the Association chargeable to such Unit which became due prior to the acquisition of title to such Unit by such acquirer.

Section 8.09. <u>Capitalization of Association</u>   Upon acquisition of record title to a Unit by the first purchaser thereof other than the Declarant or an Owner who purchases solely for the purpose of constructing a dwelling thereon for resale, a contribution shall be made by or on behalf of the purchaser to the working capital of the Association in an amount equal to one-sixth (1/6) of the amount of the annual Condominium Assessment and Master Assessment per Unit for that year as determined by the Board. Such contribution shall not be considered an advance payment of assessments and shall be in addition to, not in lieu of, assessments then or thereafter coming due. This amount shall be deposited into the purchase and sales escrow and disbursed therefrom to the Associations for use in covering operating expenses and other expenses incurred by the Associations pursuant to the terms of this Declaration and the Master Association Declaration. The funds so contributed shall not be transferable to any subsequent Owner or otherwise, and the Associations shall have no obligation to pay interest to any Owner or other person in relation thereto.

Section 8.10. <u>Exempt Property</u>   Notwithstanding anything to the contrary herein, the following property shall be exempt from payment of Condominium Assessments, Master Assessments, and Special Assessments:

(a) all Common Elements; and
(b) all property dedicated to and accepted by any governmental authority or public utility, including, without limitation, public schools, public streets, and public parks, if any.

## ARTICLE IX
## INSURANCE/CONDEMNATION

Section 9.01. (a) <u>Insurance Coverage</u>   The Board shall have the authority to and shall obtain insurance for the Property against loss or damage by fire and such other hazards as are covered under standard extended coverage provisions for the full insurable replacement cost of the Common Elements and the Units. The Board shall also have the authority and duty to obtain comprehensive

13